## Fireman's Insurance Company of Newark v. McGill.

(Decided May 13, 1915.)

### Appeal from Webster Circuit Court.

1. Depositions—Interrogatories—Notice.—If more than three days' notice to take a deposition be required by Section 567 of the

Civil Code of Practice, the party to whom the notice is given may, by a counter notice to his adversary, require the deposition to be taken upon interrogatories.

2.   Depositions—Notice—Words—Meaning of.—In determining the length of notice required by Section 567 of the Civil Code of Practice, the term "day" as used in that section means twenty-four hours, and not a working day.

3.   Depositions—Exceptions.—Where the circuit court sustained an exception to a deposition, and gave the party who took it time in which to retake the deposition, he could stand upon his rights and take the chance of the correctness of his procedure; he waived none of his rights to read the original deposition, by declining to retake the deposition.

GORDON & LAURENT and N. B. HUNT for appellant.

C. W. BENNETT and BOURLAND & BLACKWELL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Reversing.

The appellant company issued a fire insurance policy for $350.00 upon the appellee's dwelling house, in Clay, Webster County, Kentucky. The house was totally destroyed by fire on March 28th, 1913, during the life of the policy; and the usual proof of loss having been made, the company paid the $350.00 called for by the policy to the appellee, Wess McGill.

After appellant had paid the loss, it learned for the first time that appellee had procured J. T. Alderson to burn her house, for the purpose of collecting the insurance thereon. Upon the strength of Alderson's confession to that effect, the appellant promptly brought this action to recover from the appellee the $350.00 upon the ground that it had been procured from the company by the fraud of the appellee.

Upon the first trial Alderson testified, confessing he had set fire to the house at the instigation of the appellee. The first trial resulted in a hung jury.

Before the second trial was held Alderson had been committed to the penitentiary at Frankfort, and, for the purpose of securing his evidence, appellant gave ample notice that it would take his deposition, in Frankfort. Acting under section 571 of the Civil Code of Practice, appellee served a counter-notice upon appellant to the effect that it would require the deposition of Alderson to be taken upon interrogatories. Appellant disregarded

the counter-notice, and took the deposition of Alderson at Frankfort under the original notice.

Upon an exception by appellee to the deposition upon the ground that it had not been taken upon interrogatories, it was stricken from the file.

Upon the second trial plaintiff offered to read the deposition of Alderson, but was not permitted to do so; and the court having peremptorily instructed the jury to find for the defendant, the plaintiff appeals.

For a reversal appellant insists that the court erred, (1) in sustaining the exception to Alderson's deposition and striking it from the file, and (2) in giving a peremptory instruction to find for the defendant.

Really, the two grounds for a reversal are but one, since a peremptory instruction to find for the defendant could not have been given if Alderson's deposition had been read in evidence.

The only question, therefore, which need be decided is, did the court err in sustaining the exception to Alderson's deposition?

Sections 565, 567 and 571 of the Civil Code of Practice read as follows:

"565. Depositions shall be taken upon reasonable notice to the adverse party or upon interrogatories.

"567. A notice shall be deemed reasonable that allows one day for each thirty miles which the party will have to travel and one day for preparation if the distance be less than one hundred miles, and two days if it be more. If the distance exceed fifty miles and the usual mode of travel for the whole or a part of the distance be by steamboat, railroad cars or other public conveyance, the time ordinarily required by such mode of travel, with the days given for preparation, shall be deemed sufficient in the notice. If the distance be less than thirty miles, a notice which gives to the party a reasonable opportunity to be present shall be sufficient.

"571. If more than three days' notice to take a deposition be required by section 567, the party to whom the notice is given may, by notice to the adverse party or his attorney, served on the day when the first notice is given, or on the following day, require the deposition to be taken upon interrogatories."

The sections of the Code above quoted, in substance, provide that in cases where the distance exceeds 100 miles and the party receiving the notice has had two

days in which to make preparation, he must be unable, by the usual public conveyance, to make the journey to the place where the deposition is to be taken, in one day, before his adversary can be required to take the deposition upon interrogatories. If the journey requires more than one day, where the distance is more than 100 miles, the party giving the notice may be required to take the deposition upon interrogatories; if the journey can be made in one day, it may be taken upon notice, since not more than three days' notice to take the deposition is then required by section 567, *supra.*

The question for decision, therefore, is this: Was more than three days' notice to take Alderson's deposition required by section 567, *supra?*

The distance from Clay, Kentucky, to Frankfort, Kentucky, being more than 100 miles, appellee was entitled to two days for preparation; and the usual mode of travel for the whole distance between Clay and Frankfort being by railroad trains, appellee was entitled to have the notice give such further time as was ordinarily required by that mode of travel.

The only evidence as to the time required to travel form Clay, Kentucky, to Frankfort, Kentucky, by rail, is found in the testimony of L. B. Vaughn, the sheriff of Webster County, who said the trip could be made between 6 o'clock A. M. and 8:40 P. M., of the same day, by changing trains at Louisville; and that he had repeatedly made said trip in said time, and according to the regular established train schedules.

This further question then presents itself: What meaning is to be given the term "day" in which the party has to make the journey? The trial court was of opinion that the statute meant a working day, and not twenty-four hours, or from midnight to midnight, as it is usually understood.

Without going into an elaborate examination of the cases, it is sufficient to say that the current of the authorities is substantially unvarying to the effect that when the word "day" is used in a statute, or in a contract, it will, unless it is in some way restricted, be held to mean twenty-four hours; or, as it is sometimes stated, from midnight to midnight. Haines v. State, 7 Tex. App., 30; Muckenfuss v. State, 55 Tex. Crim. Rep., 229, 20 L. R. A. (N. S.), 783; People v. Keating, 247 Ills., 76; Cheek v. Preston, 34 Ind. App., 243; Benson

v. Adams, 69 Ind., 353, 35 Am. Rep., 220; Miner v. The
Goodyear Mfg. Co., 62 Conn., 410; State v. Michel, 52
La. Ann., 936, 49 L. R. A., 218, 78 Am. St. Rep., 364;
Bouvier's Law Dict.

In 13 Cyc., 263, the term "day" is defined as follows:

"As used in a statute or in a contract, twenty-four
hours, and not merely the day as popularly understood,
from sunrise to sunset, or during the time the light of
the sun is visible. At common law, twenty-four hours,
extending from midnight to midnight, including morn-
ing, evening and night. As defined by statute, the pe-
riod of time between any midnight and the midnight
following."

Blackstone says:

"In the space of a day all the twenty-four hours are
usually reckoned, the law generally rejecting all frac-
tions of a day, in order to avoid disputes. Therefore,
if I am bound to pay money on a certain day, I discharge
the obligation if I pay it before twelve o'clock at night;
after which the following day begins." Com. II., 141.

Giving this meaning to the term "day" as used in
the statute, appellee was not entitled, under section 567,
*supra,* and the facts of this case to more than three days'
notice to take Alderson's deposition; and, that being
true, appellant had the right, under section 571, *supra,*
to take the deposition upon notice, and the exception
thereto was improperly sustained.

Appellee insists, however, that appellant should not
be heard to complain of this error of the court, be-
cause after it had sustained the exception to Alderson's
deposition, and had stricken it from the record, the court
continued the case until the next term in order that the
appellant might take the deposition of Alderson upon
interrogatories; and its failure to so take the deposition
was appellant's own fault.

Appellant's complaint, however, is not that it did not
have time in which to take the deposition upon inter-
rogatories, but that the court struck it from the record
after it had properly been taken, upon notice. The dep-
osition having been properly taken, there was no neces-
city for retaking it. Appellant stood upon its rights,
taking the chance of the correctness of its procedure.
This it had the right to do.

Judgment reversed and the case remanded for further
proceedings.